IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| ANSEL O. BELUE<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>AEGON USA INC.; LIFE INVESTORS INSURANCE COMPANY OF AMERICAN; and TRANSAMERICA INSURANCE CORPORATION,<br><br>　　　　　　　　　　Defendants. | C.A. No. 7:08-CV-2318-GRA<br><br>**COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)** |

COMES NOW the Plaintiff, ANSEL O. BELUE, who hereby files this Complaint against the above-named Defendants, and who would respectfully show unto the Court as follows:

**PARTIES**

1.　　Plaintiff, ANSEL O. BELUE, is a South Carolina citizen residing at 215 Brittany Road, Gaffney, South Carolina 29341-1007. At all times relevant hereto, Plaintiff is (and was) an owner of a Cancer Only Policy issued by Defendant Life Investors Insurance Company of America ("LIFE INVESTORS")[1] and administered by AEGON USA, INC. ("AEGON USA") through its various wholly owned subsidiaries, including Defendant Transamerica Life Insurance Company ("TRANSAMERICA"). Plaintiff purchased this policy in South Carolina from an agent located in Gaffney, South Carolina.

2.　　Defendant LIFE INVESTORS is an Iowa corporation that provides insurance to consumers in South Carolina and throughout the United States. Defendant LIFE INVESTORS'

---

1. Upon information and belief, on or about December 31, 2001, Bankers United Life Assurance Company merged with and into Defendant LIFE INVESTORS.

principal place of business is, upon information and belief, located at 4333 Edgewood Road, NE, Cedar Rapids, Iowa, 52499.

3.     Defendant TRANSAMERICA is an insurance company authorized to transact the business of insurance in South Carolina.  Defendant TRANSAMERICA is an Iowa corporation that provides insurance to consumers in South Carolina and throughout the United States.  Defendant TRANSAMERICA's principal place of business is, upon information and belief, located at 4333 Edgewood Road, NE, Cedar Rapids, Iowa, 52499.

4.     Defendant AEGON USA is an Iowa corporation that provides insurance products and services to consumers in South Carolina and throughout the United States, through wholly owned subsidiaries and/or through itself.  Defendant AEGON USA's principal place of business is, upon information and belief, in Cedar Rapids, Iowa.

5.     Defendant AEGON USA is the parent company of several subsidiaries that provide services to Defendant LIFE INVESTORS.

6.     Defendant AEGON USA controls through its various subsidiaries marketing, selling, underwriting and related financial aspects of Defendant LIFE INVESTORS' insurance policies.

7.     Upon information and belief, Defendant AEGON USA is a wholly owned subsidiary of AEGON NV, a Dutch corporation.

8.     Upon information and belief, Defendant AEGON USA provides its annual reporting through the annual reports of AEGON NV.

9.     Upon information and belief, in those annual reports, Defendant AEGON USA reports the assets, liabilities and cash flow of Defendant LIFE INVESTORS as assets, liabilities and cash flow of Defendant AEGON USA, and ultimately AEGON NV.

10. Upon information and belief, employees of Defendant AEGON USA or a subsidiary of Defendant AEGON USA determined Plaintiff's entitlement to benefits under the insurance policy at issue.

11. Upon information and belief, Defendant LIFE INVESTORS has a contract with Defendant AEGON USA or one of its subsidiaries to provide claims handling services and Defendant AEGON USA or one of its subsidiaries has assumed certain duties under the contracts at issue.

12. Upon information and belief, in reports to the various state insurance commissioners and agencies, Defendant LIFE INVESTORS uses the assets of (or loans from) its parent company Defendant AEGON USA to meet certain liquidity requirements.

13. Upon information and belief, the monthly premium paid by Plaintiff was ultimately paid to Defendant AEGON USA.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this matter and over these parties pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

15. The events giving rise to this Complaint arose in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and is premised on the fact that Defendants do business in this District and various events, acts and omissions relating to the claim occurred in this District, including repetitive acts of selling or servicing insurance products in this District. Because of Defendants' contacts with the Plaintiff, including the collection of monthly premiums, directly or indirectly from Plaintiff, as well as administering claims, Defendants are each subject to personal jurisdiction in this District.

17.     Jurisdiction and venue are proper as the sale of the insurance policy at issue giving rise to this cause of action occurred in this jurisdiction.

## **FACTS**

18.     This case arose out of Defendants' breach of an insurance policy issued to Plaintiff. This policy, called a "Cancer Only Policy," was designed to provide policyholders with a direct cash benefit in exchange for regularly paid premiums.

19.     The Policy was <u>not</u> written in such a way as to intercede on behalf of policyholders to pay healthcare providers directly, but to provide the insured with a cash payment to use <u>however the policyholder saw fit</u>.

20.     The Defendants marketed and sold a number of Cancer Only Policies which, as written, promised to pay to the insured, such as Plaintiff, benefits regardless of any other insurance coverage carried by the insured.

21.     These policies promised to pay to the insured an amount equal to the "actual charge" for certain cancer treatment procedures and services. (As used herein, the term "actual charge" refers to benefits paid on the basis of the amount billed by the medical service provider, and without regard to any agreements between the medical service providers and third-party insurers).

22.     Prior to 2006, the benefits paid under Plaintiff's Cancer Only Policy were paid in an amount equal to the "actual charge" shown on the hospital bills and/or physician statements.

23.     Plaintiff later learned that the payment of such benefits would no longer refer to healthcare providers' actual charges as its index, but rather would refer to partial payments of those amounts that the healthcare provider may have received from third party payors such as Medicare, Medicaid, and third party insurers (such as Blue Cross/Blue Shield) thereby attempting to unilaterally create a "new index" for performance under the Cancer Only Policy.

Specifically, Defendants described a change with respect to all benefits contained in the Cancer Only Policy which were based upon the "actual charge" of certain kinds of medical services, such as radiation therapy, chemotherapy and blood treatments.

24.    Upon information and belief, that same form letter has been sent to other policyholders receiving benefits.

25.    In other words, before their repudiation described in the form letter, Defendants' performance under the insurance contract was indexed to the actual prices physicians and healthcare providers charged for their services before any reductions to those charges based on third party agreements between the healthcare provider and healthcare insurers. Such arbitrary and unilateral revision of a key element of the contract, namely the index used to measure Defendants' performance, constitutes a clear breach of the terms of the insurance contract at issue.

26.    Defendants did exactly what they said they would do in the form letter and changed the standard policy and practice and systematically denied Plaintiff's claims where hospital bills and/or physician statements were submitted as the insured's "proof of loss" for the charges actually submitted by the hospital and/or physician.  Rather than reimbursing claims on the basis of "actual charges" billed by Plaintiff's medical care providers, the Defendants paid claims based on the lesser amount that the insured's public or private third-party health insurer negotiated with the healthcare provider. Defendants reduced the benefit provided by the Cancer Only Policies in direct contravention of the policies.

27.    The Plaintiff's contract with Defendants specifically states no unilateral changes may be made, and sets forth certain conditions for making any change or amendment to the contract. *See Cancer Only Policy, page 14, Section I - General Provisions, part 1.*

28.  These pre-conditions for changing the Policy benefits were not followed. In failing to do so, Defendants breached the Cancer Only Policy with the Plaintiff, resulting in "reduced benefits" being paid to Plaintiff.

29.  On information and belief, Defendants have also changed their standard policy and practice for payment of said benefits for other insureds. Defendants thereafter purported to require insureds, such as the Plaintiff, to submit new and entirely irrelevant statements such as Explanation of Benefits ("EOBs") from the insureds' third-party healthcare insurance companies and other statements from third parties that reflected the amounts such entities partially paid as a negotiated rate or "expense," as opposed to what their "actual charges" were.

30.  In doing so, Defendants breached the Cancer Only Policy with the Plaintiff, resulting in "reduced benefits" being paid to Plaintiff.

31.  Defendant AEGON USA, by and through various subsidiaries, provides administrative services to its wholly owned subsidiaries, including underwriting and claim servicing functions.

## ANSEL O. BELUE'S CANCER ONLY POLICY

32.  On or about March 3, 1998, Defendants issued Cancer Only Policy No. 0G1313702, to Plaintiff.

33.  The Cancer Only Policy issued to Plaintiff is intended to provide benefits, in exchange for regularly-paid premiums, in the event that Plaintiff is diagnosed with a form of cancer covered by the Cancer Only Policy.

34.  Plaintiff's Cancer Only Policy included benefits for Radiation Therapy, Chemotherapy Treatments, and treatment for Blood, Plasma, and Blood Components, as well as other benefits. *See Cancer Only Policy, pages 7-8.* In the event of a covered cancer diagnosis,

the Policy entitled the Plaintiff to payment for all "actual charges" for these benefits, and others, such as ambulance services.

35.     Under Section C of the Cancer Only Policy, an insured becomes entitled to benefits after being "Positively Diagnosed"[2] with "Cancer"[3] while the policy is in force.  *See Cancer Only Policy, page 5*.   These benefits are paid according to benefit provisions appearing throughout the Cancer Only Policy, provided that "(a) The Cancer is first diagnosed after the 30 day 'waiting period'[4]; and (b) The loss is incurred (e.g. treatment is received or the service is performed) while this policy is in force, and (c) All other provisions of this policy apply."  *See Cancer Only Policy, Section C, p. 5*.

36.     With respect to the benefits provision applicable hereto in Section E, at pp. 7-8, the Defendants promise to pay the "actual charges" of various benefits, including, but not limited to Radiation Therapy and Chemotherapy treatments, as well as treatment for Blood, Plasma, and Blood Components, among others.

37.     Absent an assignment, these benefits are payable directly to the policyholder, regardless of whether the insured has other health insurance coverage in place.  The insured is free to use these monies for any purpose.

38.     The Cancer Only Policy does not include within its provisions an express definition of "actual charge."

---

[2] The term "Positively Diagnosed" is specifically defined.  *See Cancer Only Policy, page 4.*

[3] The term "Cancer" is specifically defined. *See Cancer Only Policy, page 3.*

[4] The term "waiting period" refers to that period of time that starts with the "Effective Date." The Cancer Only Policy does not cover any cancers diagnosed during this 30-day "waiting period."  However, pursuant to an Amendatory Endorsement issued to Plaintiff, "all Policy references to a 30-day waiting period before benefits are payable" were deleted in their entirety.

39. Importantly, in Section F – *Exceptions and Limitations* of Plaintiff's Cancer Only Policy, there is no reference to the "actual charge" determination. *See Cancer Only Policy*, page 12.

40. As used throughout the Cancer Only Policy in relation to other terms, however, the term "actual charge" means the amount actually billed by healthcare providers as opposed to partial amounts ultimately expensed by the third party (or other) insurers.

41. Defendants continuously represented to the Plaintiff and other insureds through Defendants' prior course of conduct, claim forms and the terms of the Policy, that Defendants had provided a Cancer Only Policy that would pay certain benefits in the form of the "actual charges" billed by medical providers and suppliers, in the event the Plaintiff and the other insureds were to get cancer and require certain medical treatment.

42. With respect to other insureds who owned an identical policy, Defendants followed standard and regular practice prior to 2006, of paying benefits equal to "actual charges" using the amount healthcare providers billed for their services as the index to determine the amount of benefits due, without any consideration given to whatever amount was ultimately paid by a third-party insurer.

43. Therefore, prior to 2006, Defendants interpreted the Policy they drafted to require payment of benefits on this basis.

44. As such, Defendants, through their pattern and practice, established the amount of charges billed by healthcare providers as the sole index upon which such benefits are based under the Cancer Only Policy contract, with respect to the "actual charge" language in the contracts.

45. Alternatively, Defendants, by and through their pattern of conduct, waived and relinquished whatever right they may have had to base such benefits on amounts paid by third party payors, and are estopped from asserting this "right" at this time.

46. In 2006, Defendants informed Plaintiff and other insureds that Defendants were going to unilaterally switch the index used for the payment of such benefits and would require the submission of Explanation of Benefits ("EOBs") and similar documents showing what was ultimately paid by third-party insurers, as opposed to the "actual charges" assessed for the services rendered as reflected in an insured's hospital bills and physician's statements.

47. Through various form letters, the Defendants sought to unilaterally change the terms of the policy, <u>without consideration</u>, by substituting EOBs and similar statements for actual billing statements showing "actual charges" as the index upon which they based their payment of the benefits contained in the Cancer Only Policy which were based upon the "actual charge" of certain kinds of medical services, such as radiation therapy, chemotherapy treatments and blood, plasma and blood components.

48. Defendants had no authority to make this unilateral and material change to the Cancer Only Policy either under the terms of the policy itself or under any applicable law.

## PLAINTIFF POSITIVELY DIAGNOSED WITH CANCER

49. On or about June 13, 2007, Plaintiff was diagnosed with cancer of the nasopharynx, a form of cancer covered by his Cancer Only Policy. At the time, Plaintiff was a 39-year-old football coach for Gaffney High School.

50. Plaintiff timely and properly filed a claim under his Cancer Only Policy.

51. Plaintiff was therefore entitled to benefits under the Policy.

52. Upon information and belief, the Defendants thereafter verified Plaintiff's entitlement to such benefits.

53.     As a result, the Plaintiff's entitlement to benefits for these treatments is not subject to dispute for purposes of this action.

54.     Defendants repudiated their contractual obligation in 2006, by the mailing of various form letters to Plaintiff and others.

55.     On or about June 17, 2007, Plaintiff submitted his claim form and documentation to Defendants seeking coverage for his cancer treatment expenses.  He submitted the statement of charges furnished by the treating hospital, his physician, and other health care providers, and requested that Defendants honor the terms of the contract and make benefit payments as required under the contract.

56.     Thereafter, Defendants informed the Plaintiff through a computerized notice that he had improperly submitted his "proof of loss."

57.     Plaintiff was told he must re-submit his proof of loss attaching an EOB from whatever other medical care coverage Plaintiff may have had in place for the services rendered, and in so doing, refused Plaintiff's demand that Defendants provide benefits pursuant to the terms and prior course of dealings with other insureds pursuant to the cancer contracts.

58.     The new "proof of loss" requirement was contrary to the terms and/or the established course of dealing that existed between Defendants and its insureds prior to May, 2006.

59.     Plaintiff re-submitted his proofs of loss, attaching the multiple EOB provided by his third party insurers, which showed they had paid only a portion of the amount charged because of a negotiated fee with the medical providers.  The submission of the EOBs were in addition to the actual hospital bills and physicians' statements Plaintiff submitted previously.

60.     As a result, the Plaintiff received an amount that was significantly less than that to which he was properly entitled under the Cancer Only Policy.

61.   Defendants continued to provide these "reduced benefits" based upon their new found interpretation of the contract.

## COUNT I
### (BREACH OF CONTRACT)

62.   Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

63.   Plaintiff was covered under the Cancer Only Policy, issued by Defendant LIFE INVESTORS and administered by Defendant AEGON USA through its various wholly owned subsidiaries, including Defendant TRANSAMERICA.

64.   Plaintiff made a valid and timely claim for benefits under the terms of the policy and Defendant has refused to pay.

65.   Plaintiff has paid all premiums and has met all other conditions precedent to have a valid contract for insurance coverage and has satisfied the terms of the contract entitling him to full benefits under the contract.

66.   The Cancer Only Policy between Defendants and Plaintiff obligates Defendants to provide benefits for covered treatments in the amount of the "actual charges" for the care provided.

67.   The term "actual charges" is not separately, specifically and expressly defined in the policy.

68.   However, the plain meaning of the term "actual charges" with respect to healthcare as that term is used in relation to other terms throughout the policy plainly refers to the actual charge for services and care rendered by healthcare providers as shown on billing statements as the amount of payment due. It does <u>not</u> refer or relate to <u>partial payments</u> of those charges by the Plaintiff or third parties showing actual "expenses" and/or negotiated fees.

69.     Even if the term "actual charge" is ambiguous, Defendants' conduct prior to 2006, established (through the Defendants' own interpretation, standard practice and common course of dealing with its insureds) that the term means and refers to the actual charge for services and care rendered by healthcare providers, as opposed to some negotiated rate between the medical providers and a third party insurers.

70.     Alternatively, Defendants, by and through their pattern of conduct, waived and/or knowingly relinquished whatever right they possibly may have had to base the amount of such benefits on EOBs or similar statements reflecting amounts paid by third party payors.  This waiver results from an uninterrupted pattern of clear, unequivocal and decisive conduct establishing that submission of EOBs and similar statements was not required and that claims would instead be based on amounts charged as reflected by physician statements or other similar billing statements showing the "actual charges."

71.     Defendants are likewise estopped from arguing an interpretation different from this prior, common practice.

72.     Defendants repudiated the contract, as set forth fully above.

73.     Defendants breached their contract with the Plaintiff by denying full payment to him when Plaintiff sought benefits consistent with the plain meaning of "actual charges" and consistent with Defendants prior standard practice and common course of dealing with other insureds.

74.     Defendants' breach of contract continues as evidenced by their continued refusal to perform the duties set out in the contract.

75.     As a direct and proximate result of said breach, Plaintiff has suffered and continues to suffer substantial damages entitling him to an award of damages are permitted by law.

**COUNT II**
**(BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING)**

76. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

77. Plaintiff was covered under the Cancer Only Policy, issued by Defendant LIFE INVESTORS and administered by Defendant AEGON USA through its various wholly owned subsidiaries, including Defendant TRANSAMERICA.

78. At all times relevant to the matters alleged herein, Defendants owed Plaintiff an implied duty of good faith and fair dealing in connection with the Cancer Only Policy issued to him and the special relationship that arose there from.

79. Defendants' duty in this regard included a good faith obligation to honor the Cancer Only Policies as written and to properly pay benefits owed to insureds as established by contract and its longstanding and common course of dealing with its insureds.

80. Defendants breached their duty first when it was announced in 2006 that it would no longer pay for radiation, chemotherapy treatment and blood, plasma, and blood components benefits using the "actual charges" on healthcare providers' billing statements as its index for determining the benefits (i.e., the amount of insurance) to be paid to the Plaintiff under his Cancer Only Policy. This was a clear repudiation of the established contractual duties under the Cancer Only Policies.

81. Defendants breach continued after sending the notices to insureds, such as Plaintiff, when they systematically refused to pay claims, as set forth fully above.

82. Plaintiff made a formal demand for payment of benefits, and Defendant has either failed or refused to pay further benefits, as set forth above.

83. Defendants acted in bad faith in denying benefits to Plaintiff or in failing to timely make a decision on Plaintiff's claim.

84. As a result of said breaches, Plaintiff suffered harm entitling him to an award of compensatory and punitive damages.

## COUNT III
## (BAD FAITH - TORT)

85. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

86. Plaintiff was covered under the Cancer Only Policy, issued by Defendant LIFE INVESTORS and administered by Defendant AEGON USA through its various wholly owned subsidiaries, including Defendant TRANSAMERICA.

87. At all times relevant to the matters alleged herein, Defendants were under a duty to use good faith in the handling of Plaintiff's claims.

88. Defendants failed and refused to act in good faith, and instead deliberately breached the contracts of insurance in bad faith, and in the absence of any legitimate or arguable reason not to perform as required, by intentionally, willfully, deliberately, and/or recklessly refusing to pay benefits which the Defendants knew were owed the Plaintiff.

89. Plaintiff's claim for benefits is due and payable. Plaintiff filed a demand for full benefits, which constituted a formal demand for payment, and Defendants have refused to pay full benefits.

90. Defendants impeded a legitimate and well-supported claim for benefits, which clearly shows intent not to honor the terms of the policy.

91. Defendants acted in bad faith in denying benefits (in full) to Plaintiff and/or in failing to timely make a decision on the claim.

92. As the direct and proximate result of Defendants' intentional, willful, deliberate, and/or reckless bad faith conduct and refusal to pay benefits that Defendants knew were owed the Plaintiff, the Plaintiff was injured and damaged as alleged fully above. In addition to actual

damages, because Defendants acted willfully and in reckless disregard for the Plaintiff's rights, then Plaintiff is entitled to an award of punitive damages.

## COUNT IV
### (PROMISSORY ESTOPPEL)

93.  Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

94.  Plaintiff was covered under the Cancer Only Policy, issued by Defendant LIFE INVESTORS and administered by Defendant AEGON USA through its various wholly owned subsidiaries, including Defendant TRANSAMERICA. The Cancer Only Policy was designed to provide policyholders with a direct cash benefit in exchange for regularly paid premiums.

95.  Plaintiff's policy was not written in such a way as to intercede on behalf of Plaintiff to pay healthcare providers directly, but to provide the Plaintiff with a cash payment to use however Plaintiff saw fit.

96.  Through their prior conduct and course of dealings, the Defendants promised to pay to the Plaintiff certain benefits regardless of any other insurance coverage carried by the Plaintiff.

97.  Through their prior conduct and course of dealings, the Defendants promised to pay to Plaintiff an amount equal to the "actual charge," which Defendants promised would be the benefits paid on the basis of the amount billed by the medical service provider, without regard to any agreements between the medical service providers and third-party insurers.

98.  Upon information and belief, Plaintiff received a letter confirming the merger between Bankers United Life Assurance Company and Life Investors Insurance Company of America had occurred. This letter promised that Defendant Life Investors would carry out all of

the obligations of Plaintiff's Policy with Bankers United, and promised further that the terms and conditions of such Policy would not change.

99.    These existing promises made by Defendants to Plaintiff were unambiguous in their terms.

100.   Plaintiff reasonably relied on the promises by the Defendants, the reasonableness of such reliance is evidenced by the allegations as set forth fully above.

101.   Plaintiff's reliance was expected and foreseeable by the Defendants.

102.   As the direct and proximate result of Defendants' refusal to pay benefits that Defendants promised would be paid, the Plaintiff sustained substantial economic injury in reliance on the promises made by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court take testimony and hear other evidence concerning this matter, and after receiving the same, that it grant judgment against Defendants for actual and punitive damages as requested herein, and for such other and further relief as it may deem just and proper.

ATTORNEYS FOR PLAINTIFF:

 s/ Patrick E. Knie            .
PATRICK E. KNIE (#2370)
**Patrick E. Knie, PA**
Post Office Box 5159
Spartanburg, South Carolina 29304-5159
Phone: (864) 582-5118
Fax:    (864) 585-1615
Email:  pknie@knielaw.com

**Gary E. Clary** (#157)
111-2 Hammock Court
Central, South Carolina 29630
Phone:  (864) 415-0886
Fax:    (864)250-8829
Email:  gary.clary@gvltec.edu

William E. Hopkins, Jr. (#6075)
Susan F. Campbell (#9223)
**Hopkins & Campbell, LLC**
1122 Lady Street, Suite 1010 (29201)
Post Office Drawer 11963
Columbia, South Carolina 29211
Phone:  (803) 256-6152
Fax:     (803) 256-6155
Email:  wehopkins@hopkinscampbell.com
Email:  scampbell@hopkinscampbell.com


**Andrew J. Johnston** (#4707)
Post Office Box 3252
Spartanburg, South Carolina 29304
Phone: (864) 591-1093
Fax:     (864) 591-1371
Email: ajj@justicewarriors.com

Spartanburg, South Carolina

June 24, 2008